R. H. NORTHCUTT, TRADING AS PREMIUM CREDIT COMPANY, v. I. L. CLAYTON, COMMISSIONER OF REVENUE FOR THE STATE OF NORTH CAROLINA.

(Filed 3 February, 1967.)

Taxation § 26—

    The fact that the activity of a company is limited to insurance premium financing renders it no less a finance company, and the authority given by a borrower to such finance company to cancel the policy and collect the unearned premium upon the borrower's default, is security analogous to a chattel mortgage or a conditional sale, and therefore an insurance premium financing company comes within the purview of G.S. 105-88(a) and is liable for the privilege license tax imposed by that section for the purpose of revenue in addition to the license fee imposed by G.S. 53-56 for the purpose of defraying expenses of regulation.

APPEAL by plaintiff from *Gambill, J.,* in chambers at Carthage, April 26, 1966. From ANSON.

This civil action, instituted under G.S. 105-266.1 to recover license taxes paid under protest, was heard by the court without a jury upon an agreed statement of facts. These facts, supplemented by reference to pertinent statutes, *Finance Co. v. Currie, Commissioner of Revenue,* 254 N.C. 129, 118 S.E. 2d 543, are summarized as follows:

Plaintiff, operating as Premium Credit Company, is engaged in the business of insurance premium financing as defined and regulated by Article 4, Chapter 58 of the North Carolina General Statutes, G.S. 58-55 to -61.1 (the Article), and is subject to its provisions. He has paid to the Commissioner of Insurance the license fees required by G.S. 58-56. In insurance premium financing, a person or business entity lends money to pay the premium on an insurance policy, and the borrower-insured executes an "insurance

premium finance agreement," in which he undertakes to repay the finance company the amount advanced, plus service charges, in monthly installments. G. S. 58-55. To secure repayment of the loan, the insured also executes a power of attorney authorizing the finance company to cancel the insurance if he fails to pay any installment as it becomes due and to receive the refund of any unearned premiums. G.S. 58-60.

The following persons and business entities are exempt from the provisions of the Article: "banks, trust companies, installment paper dealers, auto finance companies, savings and loan associations, co-operative credit unions, agricultural credit corporations or associations, organized under the laws of North Carolina or any person, firm or corporation subject to the provisions of the North Carolina Consumer Finance Act and the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law, article 12, chapter 20, of the General Statutes of North Carolina. . . ." G.S. 58-56.1.

Plaintiff operates his own insurance agency in addition to Premium Credit Company. The latter finances premiums on policies that his insurance agency writes as well as those issued by other insurance agents. Other agents provide approximately one-half of Premium Credit Company's business. Plaintiff does no financing except insurance premium financing.

For the years 1964 and 1965, defendant Commissioner of Revenue, required plaintiff to pay the Schedule B license tax of $750.00 levied by G.S. 105-88 upon loan agencies or brokers as defined therein. Plaintiff, contending that the license fee imposed by G.S. 58-56 was the limit of his liability, paid defendant the sum of $1,500.00 under protest. On November 24, 1965, he instituted this action to recover the payment. He has met all procedural requirements.

Judge Gambill, after hearing the cause, concluded that plaintiff is liable for both the tax levied by G.S. 105-88 and the license fee required by G.S. 58-56. He entered judgment dismissing the action and taxing plaintiff with the costs, and plaintiff appealed.

*Taylor, McLendon & Jones for plaintiff.*
*Thomas Wade Bruton, Attorney General, and Peyton B. Abbott, Deputy Attorney General, for defendant.*

SHARP, J. This appeal presents one question: Must the operator of an insurance premium financing business pay to the Commissioner of Revenue a privilege license tax under G.S. 105-88 in addition to the license fee which G.S. 58-56 requires him to pay to the Commissioner of Insurance? In pertinent part, G.S. 105-88 provides:

"Loan agencies or brokers. — (a) Every person, firm or corporation engaged in the regular business of making loans or lending money, accepting liens on, or .contracts of assignments of, salaries or wages, or any part thereof, or other security or evidence of debt for repayment of such loans in installment payment or otherwise, and maintaining in connection with same any office or other located or established place for the conduct, negotiation, or transaction of such business and/or advertising or soliciting such business in any manner whatsoever, shall be deemed a loan agency, and shall apply for and procure from the Commissioner of Revenue a State license for the privilege of transacting or negotiating such business at each office or place so maintained, and shall pay for such license a tax of seven hundred fifty dollars ($750.00).

"(b) Nothing in this section shall be construed to apply to banks, industrial banks, trust companies, building and loan associations, co-operative credit unions nor installment paper dealers defined and taxed under other sections of this article, nor shall it apply to the business of negotiating loans on real estate as described in § 105-41, nor to pawnbrokers lending or advancing money on specific articles of personal property. It shall apply to those persons or concerns operating what are commonly known as loan companies or finance companies and whose business is as hereinbefore described, and those persons, firms, or corporations pursuing the business of lending money and taking as security for the payment of such loan and interest an assignment of wages or an assignment of wages with power of attorney to collect same, or other order or chattel mortgage or bill of sale upon household or kitchen furniture."

Plaintiff, although conceding in his brief that he is engaged in "a type of financing which indirectly amounts to lending money," contends that he is not engaged in the *regular* business of making loans and that his business is not one of those "commonly known as loan companies or finance companies." This contention, however, will not stand scrutiny. Plaintiff is no less a finance company because he lends money for one purpose only, *i. e.,* financing insurance premiums; and certainly he takes security for the repayment of his loan when he accepts a power of attorney authorizing him to cancel his debtor's insurance and to collect the unearned premium on the policy upon the debtor's default. G.S. 58-60. Plaintiff's insurance premium finance agreement, prepared pursuant to G.S. 58-58.1, provides, *inter alia,* that the borrower's failure to pay any installment within five days from the due date empowers plaintiff to "begin

proper action as set forth in G.S. 58-60." As a consequence of these agreements, the purposes of the State's motor vehicle financial responsibility acts are sometimes thwarted. See *Daniels v. Insurance Co.*, 258 N.C. 660, 129 S.E. 2d 314, and *Griffin v. Indemnity Co.*, 265 N.C. 443, 144 S.E. 2d 201; *Griffin v. Indemnity Co.*, 264 N.C. 212, 141 S.E. 2d 300.

In practical effect, plaintiff's security is as much a purchase-money mortgage on the commodity which his debtor has bought as any chattel mortgage or conditional sales agreement could be. He is, therefore, a person described in section (a) of G.S. 105-88, and insurance premium finance companies are not specifically exempted by section (b). Notwithstanding, plaintiff contends that when the Consumers Finance Act (G.S. 53-164 to -191), the Article, and G.S. 105-88 are considered together, they disclose the legislative intent not to require the $750.00 license tax of insurance premium financiers.

The Consumer Finance Act requires all persons — a generic term embodying any business entity — who engage in the business of lending money in amounts of $600.00 or less and who receive in connection with such loans interest and other compensation or expenses aggregating more than six per cent per annum to secure a license from the Commissioner of Banks. He supervises the activities of these small loan companies in a manner similar to that in which the Commissioner of Insurance supervises the activities of insurance premium financing companies. To cover the expenses of the Commissioner of Banks and to defray the costs of his investigations, each licensee is required by G.S. 53-167 to pay fees as specified in G.S. 53-122. These fees are similar in purpose to those required of insurance premium financiers by G.S. 58-56. In addition to the fee, each licensee under the Consumer Finance Act also pays the $750.00 privilege tax exacted by G.S. 105-88. Chapter 1053 of the Public Laws of 1961 rewrote the North Carolina Small Loan Act and specifically provided in section 3: "All laws and clauses of laws in conflict with this Act are hereby repealed; provided, however, G.S. 105-88 is not hereby repealed. . . ." As an administrative practice, the Commissioner of Banks and the Commissioner of Revenue exchange lists to ensure that all loan agencies pay the privilege tax and to ensure that the Commissioner of Banks is cognizant of all agencies subject to his regulation.

The convolution of plaintiff's theory of nonliability for a privilege tax is this: All loan agencies subject to the provisions of G.S. 105-88 are likewise subject to the provisions of the Consumer Finance Act, which does not exempt the business of insurance premium financing from its coverage. If plaintiff is subject to G.S. 105-88,

and thus controlled by the Consumer Finance Act, the Article would not apply to him because it specifically exempts from its coverage those who come under the Consumer Finance Act. The legislature obviously intended no such result; therefore, G.S. 105-88 has no application to plaintiff.

Plaintiff has put the cart before the horse, and his attempted rationalization will not support the conclusion he purports to found upon it. All loan agencies subject to the provisions of G.S. 105-88 are not subject to the provisions of the Consumer Finance Act, and G.S. 105-88 applies to *all* the loan agencies specified therein, irrespective of the amounts which they lend or the interest they charge. The tax it imposes on loan agencies or brokers is merely one of the Schedule B license taxes imposed by Article 2 of Chapter 105 of the General Statutes for the privilege of carrying on a particular business, and its purpose is to raise revenue. G.S. 105-33 expressly provides that the issuance of a license under Art. 2, ch. 105 "shall not of itself authorize the practice of a profession, business, or trade for which a state qualification license is required." The fees exacted of insurance premium financiers by G.S. 58-56 and of persons engaged in business under the Consumer Finance Act by G.S. 53-167 are intended to pay the necessary expenses of licensing, regulating, and supervising the business. True, any surplus reverts to the general treasury of the State, G.S. 58-61.1, but this is merely an incidental budgetary provision. There is no injustice and nothing unusual in requiring a business to contribute both to the general fund of the State and to the cost of enforcing the laws regulating it. G.S. 105-41 imposes a privilege license upon attorneys, physicians, and many other professionals, most of whom are also required to pay an annual fee to the regulatory board which licensed them.

Plaintiff concedes that he is subject to the Article. Had the legislature intended to subject to the provisions of the Consumer Finance Act those who make loans solely to finance insurance premiums, surely it would not have enacted the Article (N. C. Pub. Laws 1963, ch. 1118) in the first instance, since it exempts from its provisions those subject to the Consumer Finance Act. G.S. 58-56.1. Obviously, the legislature did not deem it necessary for both the Commissioner of Banks and the Commissioner of Insurance to supervise an insurance premium financing company.

There is another matter which has a proper place in our consideration of the legislative intent. At the 1965 Regular Session of the General Assembly, House Bill 1182, "a bill to exempt insurance premium finance companies from the payment of privilege license taxes under General Statutes 105-88" was defeated in the Senate on its second reading. Senate Journal, Regular Session 1965, p. 735.

The rejection of this bill strengthens our conclusion that the legislature never intended to exempt the business of insurance financing from the privilege license tax imposed by G.S. 105-88. *Yacht Co. v. High, Commissioner of Revenue,* 265 N.C. 653, 144 S.E. 2d 821; *Bosley v. Dorsey,* 191 Md. 229, 60 A. 2d 691; *Nutter v. City of Santa Monica,* 74 Cal. App. 2d 292, 168 P. 2d 741; *Safeway Stores v. Bowles,* 145 F. 2d 836 (U. S. Emer. Ct. App. 1944), *cert. denied,* 324 U.S. 847; 82 C.J.S., Statutes § 360, p. 787, n. 47.

We hold that plaintiff is required to pay the privilege tax imposed by G.S. 105-88. The judgment of the court below is

Affirmed.